UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Q.A., | |
| Plaintiff, | Hon. Joseph E. Irenas |
| v. | Civil Action No.13-03839-JEI-KMW |
| SALEM CITY BOARD OF EDUCATION, | **OPINION** |
| Defendant. | |

**APPEARANCES:**

DISABILITY RIGHTS NEW JERSEY
By: Robert A. Robinson, Esq.
210 South Broad Street
Third Floor
Trenton, New Jersey 08608
    Counsel for Plaintiff Q.A.

BARBOUR & ASSOCIATES LLC
By: Roger Barbour, Esq.
10 North Chestnut Avenue
Maple Shade, NJ 08052
    Counsel for Defendant Salem City Board of Education

**IRENAS**, Senior United States District Judge:

This matter comes before the Court on Plaintiff Q.A.'s motion for summary judgment.[1] (Dkt. No. 8.) Plaintiff claims he is entitled to an award of attorneys' fees and costs from Defendant Salem City Board of Education under the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(3)(B) ("IDEA"). For the reasons set forth below, the motion will be granted. The Court, however, will substantially reduce the award sought.

---

[1] Plaintiff moves under Fed. R. Civ. P. 56(c). The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A).

1

## I.

Plaintiff has a severe learning disability for which he receives special education services under the IDEA. (PSMF[2] ¶ 1.)

At the beginning of the 2011-2012 school year, Plaintiff was a student at Woodbridge Township School District ("Woodbridge"), where he spent half of the school day in a resource room and the remainder at Piscataway Vocational School. (PSMF ¶ 3.) Plaintiff also received individual counseling once a week. (PSMF ¶ 3.)

For reasons unknown to the Court, Plaintiff was detained at the Middlesex County Juvenile Detention Center from February 18, 2012 to June 11, 2012. Upon his release, as ordered by the New Jersey Superior Court, he was placed at DRENK, a behavioral health center in Salem, New Jersey. (PSMF ¶¶ 4, 6; PSMF Ex. A (Q.A. Aff.) ¶ 2.) Plaintiff registered as a student with the Salem City school district days later. (PSMF ¶ 7.)

On September 10, 2013, Defendant proposed an individualized educational program ("IEP") for Plaintiff. Defendant's proposal provided the following:

- Placement in Salem City's Alternative High School for four hours per day;[3]
- Daily general education instruction in four core subjects for an hour each;
- Weekly counseling services for thirty minutes; and

---

[2] PSMF refers to Plaintiff's Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment. (Dkt. No. 8-3.) Defendant did not respond to Plaintiff's assertions or provide supplemental facts.

[3] The Alternative High School, referred to as such by the parties, serves as a "transition program" for students who come to the district from out-of-district placements. This transition program allows the school to "evaluate the student's academic and behavioral needs . . . ." (PSMF Ex. K (Jan. 25, 2013 Rec. Proceedings) at 18:9-24.) All students who have been incarcerated are automatically placed in the alternative school. (PSMF Ex. K (Jan 25, 2013 Rec. Proceedings) at 60:16-61:11.)

- No vocational school services.

(PSMF ¶ 8.)

On September 12, 2012, Plaintiff filed pro se for expedited due process with the New Jersey Office of Special Education ("OSE"). (PSMF ¶ 11.) Plaintiff sought to prevent the implementation of the proposed IEP and obtain an educational program on par with the program he received at Woodbridge. (Id.) OSE converted Plaintiff's expedited due process request into a mediation request, and provided him time in which to find legal counsel. (PSMF ¶¶ 13, 16.) Plaintiff retained his current counsel, Disability Rights New Jersey. (PSMF ¶ 13.) The mediation, however, was unsuccessful. (PSMF ¶¶ 13, 16.) Consequently, the matter was transferred to the New Jersey Office of Administrative Law ("OAL") for a due process hearing. (PSMF ¶ 16.)

While the matter was ongoing, Plaintiff attended Salem's Alternative High School because Defendant refused to let him attend Salem City's Regular High School.[4] (PSMF ¶¶ 10, 14; PSMF Ex. A (Q.A. Aff.) ¶ 20.)

On November 27, 2012, Plaintiff moved before the OAL for a stay-put order, again seeking a program comparable to the one received at Woodbridge. (PSMF ¶ 17.) The OAL granted Plaintiff's motion on December 27, 2012. (PSMF ¶ 19.) The order required that Plaintiff receive:

- English and math instruction at Salem City's Regular High School;
- Placement in a vocational program; and
- Individual counseling once a week for thirty minutes.

(PSMF ¶ 20.)

---

[4] Defendant asserts it would not place Plaintiff in the Salem's Regular High School "[d]ue to the fact that Plaintiff refused to provide his Juvenile Delinquency records, and pertinent educational records[.]" (Opp'n Br. at 2)

3

Defendant, however, continued to refuse to place Plaintiff in Salem's regular high school. On January 8, 2013, Plaintiff filed a request for enforcement of the relief order. (PSMF ¶ 24.)

On January 9, 2013, Plaintiff began attending Salem City's Regular High School for half of the school day. (PSMF ¶ 25.)

On January 10, 2013, Plaintiff filed an amended due process petition ("Due Process Petition"). (Def.'s Ex. A.) Plaintiff sought an order:

- finding that Defendant violated Plaintiff's right to a "free, appropriate public education [ ] in the least restrictive environment" under the IDEA;
- requiring Defendant to provide Plaintiff with "current educational programming needs to achieve [a free, appropriate public education]";
- requiring Defendant to provide Plaintiff with "compensatory education to make up for the loss of [his free, appropriate public education]"; and
- awarding Plaintiff attorneys' fees and costs.

(Def.'s Ex. A.)

On January 15, 2013, Defendant asked Plaintiff if he would be willing to attend Ranch Hope, a program for troubled youth, on a full-time basis. (PSMF ¶ 30; PSMF Ex. F.) Plaintiff rejected Defendant's offer the next day. (PSMF ¶ 31; PSMF Ex. F.)

On March 6, 2013, the second day of the parties' plenary due process hearing, the parties entered into a stipulated settlement agreement (the "Agreement") providing for Plaintiff to be placed at Pineland Learning Center ("Pineland").[5] Pineland is a day-school for adolescents with behavioral, social, emotional, and academic challenges.

---

[5] The Agreement is a handwritten document that states, in pertinent part: "The Respondent District will place Q.A. at Pinelands [sic] Learning Center." The Agreement does not contain any language pertaining to attorneys' fees and costs. (PSMF ¶ 58.)

4

(PSMF ¶ 57; Def.'s Ex. B.) The Honorable Bruce M. Gorman signed a consent order incorporating the terms of the Agreement on May 7, 2013. (PSMF ¶ 59; Def.'s Ex. B.)

Plaintiff filed his complaint in the instant matter on June 21, 2013. He seeks reimbursement for attorneys' fees and costs incurred during both (i) the underlying due process suit and (ii) the instant application. (PSMF ¶ 61.) He requests $22,225.30 for work already rendered, plus all fees and costs to be incurred in furtherance of the instant application. (Pl.'s Br. Ex. D (Robinson Cert.) ¶ 20; Pl.'s Br. Supp. Summ. J.)

## II.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, (1986). A fact is material only if it will affect the outcome of a lawsuit under the applicable law, and a dispute of a material fact is genuine if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## III.

Pursuant to 20 U.S.C. § 1415(i)(3)(B), "the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent

5

of a child with a disability."[6] The Court holds that Plaintiff is a prevailing party and deserving of reasonable fees and costs.[7] Each determination is discussed in turn.

## A.

To be deemed a prevailing party, a plaintiff must satisfy a two part test: (1) he must have achieved some sort of relief, and (2) there must be "a causal connection between the litigation and the relief from the defendant."[8] Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128, 131 (3d Cir. 1991). Plaintiff satisfies both requirements.

First, he obtained relief. Plaintiff petitioned New Jersey to remove him from Salem's Alternative High School. The parties' Agreement did just that: Plaintiff was placed at Pineland on a full-time basis. Further, for several months, he attended Salem's Regular High School for half the day. Consequently, Plaintiff obtained actual relief.

---

[6] The Court notes that the IDEA provides attorneys' fees explicitly for the parents of a child with a disability, see 20 U.S.C. § 1415(i)(3)(B), and here, Plaintiff, an adult student, brings suit in his own name. The Court, however, does not analyze the relevance of this discrepancy because Defendant did not raise the issue.

[7] The Court further holds that Plaintiff's action is timely. Plaintiff filed the instant complaint on June 21, 2013, less than two months after ALJ Gorman approved the Agreement. Accordingly, the application is timely. See B.K. v. Toms River Bd. of Educ., 998 F. Supp. 462, 473 (D.N.J. 1988) (applying a "reasonable time" approach and finding that seeking reimbursement for attorneys' fees within two years of a settlement agreement is reasonable).

[8] It is well established that "[a]ttorney's fees may be awarded based on a settlement when it is enforced through a consent decree." Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 165 (3d Cir. 2002). Such a decree can ground an award of attorneys' fees when the order (1) contains mandatory language, (2) is entitled "Order," (3) bears the signature of a district court or administrative law judge, and (4) provides for judicial enforcement. See Id.; see also P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 853-55 (3d Cir. 2006); D.I. v. Phillipsburg Bd. of Educ., 2011 WL 1899341, *4 (D.N.J. May 18, 2011). These requirements are met here.

Second, there is a clear causal connection between Plaintiff's litigation and the relief he obtained. Were it not for Plaintiff's litigation, he would not have attended Salem's Regular High School, made possible by the OAL's December 27, 2012 order. Additionally, Plaintiff would not have attended Pineland if it weren't for ALJ Gorman's consent decree, which would not have been issued if not for Plaintiff's litigation. Consequently, Plaintiff's litigation helped bring about the relief he enjoys.

Plaintiff, therefore, is a prevailing party.

### B.

Once a plaintiff is determined to be the prevailing party, the Court must determine a reasonable fee. The starting point for such a determination under the IDEA is the lodestar: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." See P.G. v. Brick Twp. Bd. of Educ., 124 F. Supp. 2d 251, 261 (D.N.J. 2000); see also Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The Court analyzes both elements of the lodestar calculation, and then evaluates the success achieved by Plaintiff.

### 1.

"Fees awarded under [the IDEA must] be based on rates prevailing in the community in which the action . . . arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). "The prevailing party bears the burden of establishing by way of satisfactory evidence, 'in addition to [the] attorney's own affidavits,' that the requested hourly rates meet this standard of reasonableness." P.G., 124 F. Supp. 2d at 261 (quoting Washington v. Phila. Cnty Court of Common Pleas, 89 F.3d 1031, 1035 (3d

Cir. 1996)). "The party normally satisfies this burden by submitting the affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." Id.

Plaintiff submits certifications from all of the attorneys and professionals who worked on the instant matter, setting forth and justifying their hourly rates:

- Robert A. Robinson, Esq. ("Robinson"), a Senior Staff Attorney with DRNJ, provides both legal support and paralegal assistance. He has an hourly rate of $200.00 as an attorney and $135.00 as a paralegal. (Pl.'s Br. Ex. D (Robinson Cert.) ¶¶ 1, 13.) Robinson has been practicing law with DRNJ since 2002, handling primarily special education matters under the IDEA. (Id., ¶¶ 6, 7.)

- Mary A. Ciccone, Esq. ("Ciccone"), a Managing Attorney with DRNJ, has an hourly rate of $250.00. (Pl.'s Br. Ex. E (Ciccone Cert.) ¶¶ 1, 5.) Ciccone has been practicing law since 1994 and has been working for DRNJ since 1998. (Id., ¶ 2.) Ciccone supervises all special education cases at DRNJ. (Id., ¶ 3.)

- W. Emmett Dwyer, Esq. ("Dwyer"), Director of Litigation for DRNJ, has an hourly rate of $400.00. (Pl.'s Br. Ex. F (Dwyer Cert.) ¶¶ 1, 5.) Dwyer has been a licensed attorney since 1993. (Id., ¶¶ 2, 3.)

- Barbara Moran ("Moran"), a Senior Staff Advocate with DRNJ, has an hourly rate of $75.00. (Pl.'s Br. Ex. I (Moran Cert.) ¶¶ 1, 5.) Moran has worked with DRNJ since 2003 and handles mostly special education issues. (Id., ¶¶ 2, 3.)

Plaintiff also submitted certifications from attorneys not related to the instant suit who support the assertion that Plaintiff's counsel's hourly rates are reasonable. Elizabeth Athos, Esq. ("Athos"), an attorney practicing in New Jersey since 1983, attests that all of the rates charged are reasonable. (Pl.'s Br. Ex. G (Athos Cert.) ¶¶ 2, 8, 9, 10.) Hillary D. Freeman, Esq. ("Freeman"), a New Jersey attorney who represents clients in special education matters, also attests that all of the hourly rates charged "are

reasonable and below what [the attorneys and professionals] could command for special education matters in New Jersey." (Pl.'s Br. Ex. H (Freeman Cert.) ¶¶ 5, 8.)

In light of such a showing, Plaintiff has satisfied his burden of proving the reasonableness of the hourly fees. Furthermore, Defendant does not produce contradictory evidence or oppose Plaintiff's assertions. Consequently, the Court finds that the hourly rates charged are reasonable.

**2.**

A court may reduce an award of attorneys' fees if "the time spent and legal services furnished were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F)(iii).

"A prevailing party is not automatically entitled to compensation for all the time its attorneys spent working on the case; rather, a court awarding fees must decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary." Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 711 (3d Cir. 2005); see also Pub. Interest Research Grp. v. Windall, 51 F.3d 1179, 1188 (3d Cir. 1995).

"The court may not reduce an award sua sponte; rather, it can only do so in response to specific objections made by the opposing party." Interfaith Cmty. Org., 426 F.3d at 711 (citing Bell v. United Princeton Props., Inc., 884 F.2d 713, 719 (3d Cir. 1989)). "But once the opposing party has made a specific objection, the burden is on the prevailing party to justify the size of its request." Interfaith Cmty. Org., 426 F.3d at 711.

"In order to be sufficient, the briefs . . . challenging the fee request must be clear in two respects. First, they must generally identify the type of work being challenged,

9

and second, they must specifically state the adverse party's grounds for contending that the hours claimed in that area are unreasonable." Bell, 884 F.2d at 720.

"In determining whether the fee request is excessive in light of particular categorical contentions raised by the adverse party, and in setting the amount of any reduction, the court will inevitably be required to engage in a fair amount of 'judgment calling' based upon its experience with the case and its general experience as to how much time a case requires." Id. at 721.

Defendant makes the following argument in his brief, opposing compensating Plaintiff for all of the hours allegedly expended:

> In an example to show how the Plaintiff deliberately attempted to inflated [sic] his attorney's fees, . . . rather than simply telephoning[ ] Defendant and requesting consent, [Plaintiff] filed a motion to consolidate the Plaintiff's due process petition with the Defendant's due process petition. This is just one example of the inflated legal fees that have been offered by the Plaintiff.

(Def.'s Br. Opp'n Summ. J. at 4.) (citation omitted).

In response, Plaintiff argues that "it would not have made a difference if Defendant's counsel had [initially] consented to the consolidation," because even after Defendant's counsel did consent to the motion, (Pl.'s Reply Ex. E), ALJ Gorman denied the parties' request. (Pl.'s Br. Supp. Summ. J. at 6-7; Pl.'s Reply Ex. D.) "Hence, Plaintiff could not have deliberately inflated his attorney's fees if Defendant counsel's consent still resulted in ALJ Gorman's denial on December 18, 2012." (Pl.'s Br. Supp. Summ. J. at 7).

The Court does not find Plaintiff's rebuttal persuasive. The question is not whether Plaintiff <u>deliberately inflated</u> his attorneys' fees, but rather whether the hours Plaintiff's counsel expended were reasonable. Additionally, the fact that the same denial of consolidation would have arose regardless of whether a brief and motion were filed in

10

fact supports Defendant's argument that the hours expended on the motion to consolidate were unreasonable and unnecessary. Consequently, the time spent on the consolidation motion will be stricken.

Based on counsel's timesheets provided to the Court, Robinson spent a total of 0.8 hours working on the motion to consolidate. (Pl.'s Br. Ex. C.) Ciccone also spent 0.2 hours reviewing the motion.[9] (Id.) Based on Robinson's and Ciccone's hourly rates,[10] the Court finds that Plaintiff's attorneys' fees should be reduced by $210.00.[11] This brings Plaintiff's attorneys' fees and costs down to $22,015.30.

## C.

"Once the court has calculated the lodestar it may adjust that amount, primarily based on the degree of success that the plaintiff obtained." Pa. Envtl. Def. Found. v. Canon-Mcmillan Sch. Dist., 152 F.3d 228, 232 (3d Cir. 1998). The amount can be adjusted downward based on the plaintiff's success even when the claims are interrelated. Hensley, 461 U.S. at 436. While utilizing its discretion, a court should consider whether the actual "benefits of the litigation were [ ] substantial enough to

---

[9]

| Date | Attorney | Attorney Task | Hours |
|---|---|---|---|
| 11/30/2012 | Robinson | Worked on motion to consolidate sped. & GE cases | 0.2 |
| 11/30/2012 | Ciccone | Rev'd motion to consolidate | 0.2 |
| 12/2/2012 | Robinson | Worked on motion to consolidate sped & GE cases | 0.4 |
| 12/4/2012 | Robinson | Communicated w/ OAL re motion to consolidate | 0.1 |
| 12/19/2012 | Robinson | Rec'd ALJ Gorman's order denying consolidate motion | 0.1 |

[10] Robinson's hourly rate for attorney work is $200.00 per hour. (Pl.'s Br. Ex. D (Robinson Cert.) ¶ 13.) Ciccone's hourly rate is $250.00 per hour. (Pl.'s Br. Ex. E (Ciccone Cert.) ¶ 5.)

[11] Robinson: [0.8 hours] x [$200.00/hour] = $160.00. Ciccone: [0.2 hours] x [$250.00/hour] = $50.00. $160.00 + $50.00 = $210.00.

11

merit the full amount of the lodestar." Poston v. Fox, 577 F. Supp. 915, 921 (D.N.J. 1984).

The Court finds Plaintiff's benefits do not merit granting the full amount of the lodestar.

It is clear that Plaintiff sought from Defendant an IEP similar to the one he received at Woodbridge. Specifically, he wanted to attend Salem's Regular High School; receive vocational training; and benefit from weekly, individualized counseling sessions.

Plaintiff, however, received none of that. Instead, he agreed to attend Pineland on a full-time basis.[12] Consequently, he neither attends the school he wanted, nor has the schedule he desired. (See PSMF Ex. F. (Plaintiff "rejected [the] offer to place him at Ranch Hope or anywhere else on a full-time basis.") (emphasis added).) Although the relief he obtained was sufficient to warrant prevailing party status, see supra § III.A., it does not appear to be much relief at all. See D.E.R. v. Bd. of Educ. of Ramsey, Civ. No. 04-2274, 2005 WL 117944, at *19 (D.N.J. May 18, 2005) (reducing plaintiff's award by two-thirds and finding that although plaintiff crossed the "generous prevailing party threshold," she was undeserving of a larger award because of her limited success).

Accordingly, the Court will reduce the award to one-third of the lodestar, thus bringing the total award down to $7,338.43.[13] The Court finds this reduction is warranted based on what the Plaintiff specifically sought at the beginning of his litigation and throughout, and what he received in the end.

---

[12] While the possibility exists that Pineland provided Plaintiff with some of the relief he originally sought, such as vocational training and/or individualized counseling, Plaintiff's instant application fails to indicate that Plaintiff is receiving such support.

[13] $22,015.30 /3 = $7,338.43.

## IV.

For the reasons set forth above, Plaintiff's motion for summary judgment will be granted. An appropriate order shall follow.

Dated: August 8, 2014

_____
Joseph E. Irenas, S.U.S.D.J.